May I proceed, Your Honor? You may. Good morning again. I won't reintroduce myself or my colleagues on behalf of Nordstrom. For the second Nordstrom case, really it's the Balsanian and Nalbandian case. There are two cases, as the Court is aware. Balsanian and Nalbandian, and I hope I'm pronouncing their names correct, are current employees of Nordstrom. In the other case, Maraventano, the named plaintiffs are former employees. Can you just clarify at the outset what's, in terms of what's before us, the, I'm going to mispronounce the names as well, the Maraventano case, so is, I don't understand, did the District Court make a ruling in that case comparable to what we've got before us in the other? I don't believe in the, the way I understand it, and Ms. Dunn has been lead counsel until recently, that there was no motion made to compel arbitration against the Maraventano plaintiffs because they were terminated or quit before the 20, the July agreement came into effect. But is there some agreement amongst the parties that the District Court's ruling in the two class actions, I guess, that are before us, or not the two class actions, but rather the, I can't say the names, that's the problem. Balsanian and Nalbandian. Yes. The ruling in that class action applies in the other one as well? Well, as I understand it, the District Court has consolidated the two cases. Am I correct, Ms. Dunn? The, the stating of the record is that the court consolidated both cases, but specifically held they each retained their independent nature. In the motion filed in the trial court by Nordstrom, it was filed only as to the plaintiffs of Balsanian case. Correct. But when the court issued his order, he issued his order to committed class offenders, rather than addressing the narrow issue before the court. The motion tells us about Balsanian and as to Nalbandian. So does that put before this court the Merriman-Tinell case as well? Because the punitive class offenders overlap is part of the problem we have. It got a little blurry there. Yeah. After that earlier decision. Okay. That was my first point, which is we should be dealing here with the claims of Balsanian and Nalbandian, because when Nordstrom made its motion to compel arbitration, it specifically moved to compel arbitration of those two individual named plaintiffs. The district judge then decided to rule with respect to absent class members. And one of the points we want to raise is we don't think he had jurisdiction to do that. He certainly we didn't ask him to do it, and the absent class members were not before him. There was no certified class at that point. Well, but we have cases, though, in Rule 23 context. Yeah. I'll get to Rule 23 in a minute. But I want to focus on the two named plaintiffs, because they did unquestionably get the arbitration agreements. There's no dispute that they got these agreements, that they continued employment. They're still employed today. So there's real no ---- with respect to those two plaintiffs, Balsanian and Nalbandian, there's no dispute about the contract formation. There's no materials. Why can't the court, why can't the district court say, look, I have found that there is a Rule 23 violation with respect to the absent class members. And in my view, the only remedy I can impose here to sort of rectify that is to just say, for all of the players before me, this new arbitration agreement is not enforceable. Well, I don't think the district court can do that, Your Honor, because he has to deal with the circumstances about Balsanian and Nalbandian and whatever the alleged confusion was about absent members. There was no evidence of it about these two individuals. So what's the solution? I mean, as a practical matter, let's say we agreed with you and we told the district court deal with those two plaintiffs. There has to be a class representative. So what are you saying, that the plaintiffs should then put it up? Well, Mayor Montano is different, because he or she left employment before and is not continuing in employment, right? So they would need a class representative that looks something like Balsanian and Nalbandian, that is, one that had a claim and continues to be employed. So are you saying they should plug in some new class representatives? Well, no. We're saying that the other class representatives, Mara Ventano et al., can maintain their class action because they aren't subject to an arbitration agreement. And anybody else who is not subject to the July or August agreements can maintain, can be members of the class, but you can't have a member of this class that is subject to those agreements. Well, so you're just taking an indirect route to wiping out the rest of the class. Only as to the people that got, you know, well, let me move forward. All right. There is no substantive right to engage in class litigation. I mean, there's case law on that. The leading case is Deposit Guarantee v. Roper, which says it's a procedural right only. I mean, that's what Concepcion decided, that class action waivers are enforceable. And as a result of that, people that are subject to the two agreements at issue here, and actually the court ruled on the August agreement, the district court ruled on the August agreement, would not be, they can go and make their claim in arbitration. There is no waiver of any of their substantive rights. The only right they gave up in that arbitration agreement was the right to be either a class representative or a member of the class. So, yes, Judge Smith, I mean, it will, quote, wipe out, unquote, members of the, that would otherwise be class members who are subject to the arbitration agreement. But that's a function of the Concepcion ruling and of the FAA. So how does that square with the cases that suggest that a judge can invalidate an agreement and a release with putative class members if it finds that it's an improper communication with the class? I'd first like to deal with the release cases. There was no release here. Nothing was released. Those are contracts. They're all contracts, aren't they? Yes, but arbitration agreements don't release any claim. They just shift the claim from court to arbitration. A release agreement gives up the claim entirely. And that's been, you know, the Gilmer case talks about that, that all that the arbitration agreement does is shift the forum. So anybody, Balsanian, Albandian, or anybody else who was subject to these arbitration agreements has a right to go arbitrate. But they don't have a right to remain in the class. And as the Roper case and Concepcion and others say, there's no substantive right either to bring or participate in a class action. I mean, that's just a function of the ruling and Concepcion. Doesn't the savings clause of the FAA talk about ‑‑ I'm sorry. Doesn't the rule, and I need to get it in front of me, talk about actions that resolve or impede or forget the exact language of the rule? I'll get it to you. Okay. Rule 23E, I'm reading from the Santa Clara, County of Santa Clara v. Astra. Rule 23E was revised to state the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval. So doesn't an arbitration agreement compromise? No, because per Gilmer, all it does is shift the forum. The people have the same claims and the same rights in arbitration as they would have had if there was no arbitration agreement and they were in court. If I heard the rule read correctly, it also only referred to a certified class. This class was not certified at the time. But the federal rule can't affect a substantive right. We know that from the Rules Enabling Act. It cannot abridge or modify a substantive right. And the FAA is a substantive right. It says that arbitration agreements are to be given the same effect as any other contract, and contract rights are substantive rights. So I want to talk a little bit about Rule 23 in addition to that and some of the cases the district court cited. I mean, the one he relied on primarily was a pre-Concepcion case, the name of currency conversion, currency conversion. I mean, it's before Concepcion. It's before there's been a lot of water under the bridges of arbitration. What does Concepcion have to do with the Rule 23? Well, because Concepcion says that the class waivers are enforceable. It's part of the same FAA analysis that it preempted state law in the form of the Discover Bank case. And the same analysis applies with respect to Rule 23. Well, let's just put aside the claims of the two named class representatives. Okay. And let's just focus on the absent class members. Sure. As I understand what we would say under Rule 23 is we just say, look, the way you've tried to implement this new arbitration agreement, there just wasn't adequate disclosure, at least, you know, from the court standpoint. Okay. You needed to be more up front with the absent class members in saying we're going to implement this new agreement. You should be aware that, you know, you may be a member of this class. The effect of this will be X. And then if people decide to remain employed, it would be valid. Okay. So if that's the case, then it seems to me Concepcion has nothing to do with it. This is just a pure Rule 23 issue with respect to the absent class members. Well, Concepcion, Rule 23 has to be harmonized with the substance of law, which is the FAA. And we know there's only two ways that an arbitration agreement cannot be enforced. One is a State contract principle that doesn't disfavor arbitration. But the Court's not saying that it can't be enforced. It's just saying not at present because you've inadequately disclosed, you know, the relevant circumstances. He's saying it can't be enforced to this group of people that are subject to it and are also either named plaintiffs or putative absent class members. I know. I understand the analysis might be different with respect to the name. That's what I'm saying. But with respect to the absent class members, why couldn't we uphold the district court's ruling that, hey, you can do this and you can force all of these people to waive their ability to participate in a class action, but the way you've communicated that at present is not adequate and you're going to have to do it over again under my supervision. The district court, if it had had actual facts in front of it sufficient to permit that kind of order, might have, you know, in an extreme situation, might have been able to do it because then it would have been fraud or some other kind of State law contract defense. But the key point in Judge Watford's question is under my supervision, I think. Right. So Rule 23 gives the Court supervisory power. And so once you're in a class action environment, then you've got to work with that district judge in terms of how you communicate and what you say to the putative class members so that the communication is clear and the class members are informed. And that's his point. It's not about enforcement or not. It's about the Court's supervisory power. I understand that. And let me try to make two comments. Number one, Judge Miller did not have any evidence that anybody was misled. And if you read his opinion, it's obvious. He says, it seems like many, perhaps most people may have been confused, but there was no people coming in and saying they were confused. How would they not have been confused? Well, I mean, if there were some – how were they not confused? The same reason that everybody – There's no class certified, so no notice has been given. They're supposed to go down and check the dockets of the course and see, hey, maybe I'm subject to one of these classes. Because when they read the arbitration agreement that came out in July, June and effective in July, it said it's got a class waiver. But they don't know that they might be a putative class member of a pending class action at that point. Well, they don't know that, but they also know whether they are or not. They're giving up that right. I mean, I'm a little surprised to hear you try to defend this. It seems to me quite clear that a district court – I understand why the district court was offended by this. I'm offended by it. And I'm with you that there's maybe a different analysis for the two, because they obviously know that there's – Right. They have lawyers. They have a class. But absent class members, I mean, it just seems ridiculous to say there needed to be evidence that those people didn't know that they might be giving up this right. In our view, the face of the agreements are not misleading. And it says you give up the right to be a class member, whether you're a class member now or not or in the future. I mean, the agreements clearly say there's a class waiver. But the case law – But you're saying – I hear you arguing basically into a circle, which is that's all fine and dandy about giving notice, but at the end of the day it doesn't matter because the agreement is absolutely enforceable against everyone. And so it really doesn't matter whether the district judge does anything with it because we get to enforce it. Well, no, if the agreement truly was misleading – in fact, the cases that the judge relied on were cases where the employer did identify the class action and said, oh, by one of them there were two or three class actions. I think this was the Securitas case. And the court said, oh, that's misleading. So the employer that identifies the class actions and has the waiver accused of misleading people, here we didn't identify any class actions, this one or anything else, and the district judge felt that was misleading too. And we fully understand the district judge's role in managing class actions. After certification, obviously things change, and this was before certification. But the fact is he basically, in our view, made just an assumption that people were misled from these agreements. So with Judge Watford's indulgence, I'd like to take you in the direction I tried to give you a little advance notice about in the Davis case. Okay. And that is to tell us why the Avery case and possibly the Pellett case would not give us a separate avenue to essentially affirm the district court. And I'm going to read to you from the Avery case. The implied covenant prevents integrated, the employer, from applying alternative dispute resolution process to all claims that accrued before integrated issued the new handbook. The critical point in time is when the claims accrued, not when the employee filed his or her judicial complaint. Okay. All right? Essentially, the court there, California Public Court, is saying that it's a violation of the implied covenant of good faith and fair dealing to impose an arbitration, a class action waiver, applicable to any claim that has accrued as of the time it makes that change. Here, all these folks fall into that group. The claim accrued for all these people prior. Why is this not avoided? Well, because the FAA specifically says that parties can agree to arbitrate existing disputes. All right? And the existing dispute, obviously, the claim accrued before, if it's now an existing dispute. I mean, we still haven't fortunately ---- So you're saying California law in, as stated in integrated and in Pellett, is just wrong. That's right. Two California Appellate Court panels, which have held slightly different grounds, got it wrong. And you want us to say that those holdings are wrong. Well, I think that, again ---- It's a matter of California law. Right? I think that they are from, again, we haven't read the cases. They weren't cited by either party. But the FAA clearly says parties can agree to arbitrate existing disputes. That's what these parties did. Past, present, future disputes is what the clause said. There's no substantive right, as we've said before, to have to be a class representative or to be a member of a class. The people that signed those agreements can still go off and arbitrate and have the same rights in arbitration as they had in the class. So, yes, I mean, based on what I've heard of the opinion, I think that you're correct, Your Honor, that it's wrong. I mean, the FAA clearly says you can arbitrate existing disputes. Okay. We'll give you a couple minutes. I'll reserve my time for rebuttal. You don't have any, but we will give you some. Thank you, counsel. Sure. And we'll hear now from the plaintiffs. Good afternoon. Judge Watford, Judge Smith. My name is Lee Crawford Boyd. I represent the Plaintiff Appellees Gina Balsanian and Nune Nalbandian. And the class which they have been certified to represent with me today are the Consolidated Case Marabuntano Counsel Matt Archbold, sitting here at the counsel table, Max Vaynerov, and from my office, Shirley Shantu. May it please the Court. The first task, in the words of Judge Trott, in this appeal, is not the question of whether FRCP 23, falls under the Savings Clause or provides some additional exception by Congress to the FAA and the general policy of enforcing otherwise valid arbitration agreements. The question here is rather the mandatory threshold inquiry that has been actually stated by my colleague on his first argument, whether there was mutual assent, whether under the very generally applicable principles of Contracts 101, there was a contract to arbitrate formed. And, Your Honor, Judge Watford, you touched on this during the questioning. Where there is, under California law and New York law and every state law, under the Multistate Bar Exam, whether there are material omissions in the offer, where there were here, because this class were existing, pending. Well, hold on. Because I just don't, I don't find it helpful to talk about these issues unless we're either talking about the absent class members or the named class representatives. So why, who are you focused on right now? Good question. And I was going to get to addressing the specifics of the different analysis that was brought up by counsel. So I'll do it now. With respect to the class, first of all, I think the analysis is the same, and here's why. Even though the representatives at the time knew they were, had filed a class action. But the judge in this case, the District Judge Miller, did find other grounds on which this contract could not be unenforced. Well, there's three points. One, it's pretty disingenuous in this. We've put in the record, and it's in the Maraventano case, at the time that Nordstrom filed their motion to stay the Maraventano class action, when the motion to compel was denied and they went up to the Ninth Circuit the first time. In their briefing, they stated as one of the bases that the Maraventano action should be stayed because this appeal would wipe out tens of thousands of the members of the class. So your question to counsel was, isn't this just an indirect way to wipe out the class, is exactly what they have briefed before Judge Miller. So this is disingenuous. I have two more points to make on the point. Judge Miller found in his findings of fact and his conclusions of law and the record supports that there were misleading statements in the offer to wit, and I can go to the district court's opinion. Employees were asked to sign the acknowledgment of receipt, but were allegedly told by Nordstrom Human Resources that the acknowledgment was not an agreement, even though the title of the document was Nordstrom Dispute Resolution Agreement. They were confused. There was confusion. Secondly, Gina Balsanian and Nune Nalbandian were not only members of the class as a putative class at that time. There were, and we got this from discovery, pending class actions to which they were in those classes and not representatives. So there was at that time omissions of material fact. And when I say material, I mean that when deciding forums, choosing between if I'm going to be in class actions as a litigant in court or I'm going to quit my job, I'm going to quit my job and be, or I'm going to sign or not sign and remain in my job and choose arbitration, Nordstrom had information that they knew they didn't have, the offeree, and that under California law is a mistake. It's fraud. Let me stop you because nothing you said has helped me sort through this, and that's why I want to take it step by step. Let's focus on the absent class members first, okay? If the district court was right in saying, hey, there was a Rule 23 violation, I need to be the one supervising any communications with the absent class members, I take it you would agree that if Nordstrom were to issue, basically just do this all over again, with, you know, the gold-plated disclosure, running through all of the consequences of an employee remaining employed, what effect it would have on their status or their ability to say that anyone who remained employed is now out, right? I would have to agree. I think the tables would be switched. Okay. So we're fine on the absent class members, and Nordstrom can just do this over again, and I hate to say it, but I bet most people would probably remain employed anyway. But put that aside. Let's focus on your, the two named class representatives. They clearly do know about this particular action, right? I mean, there's no deception there. I mean, maybe, in any event, I mean, just from a legal standpoint, they know about the action. They're presented with this class waiver that says basically for, including past disputes, pending actions, you're no longer going to be able to proceed in court with these if you stay employed, and they do. How, I don't understand how, what's the remedy that the district court can impose with respect to them? Because it's different, they're differently situated from the absent class members, aren't they? Well, the first point is I don't think they're differently situated with regard to the formation of arbitration contract, because the district court found not only the material misrepresentations in the offer and misleading, but he also found other behavior, conduct, which Rule 23d allows him to supervise. The conduct on which Nordstrom, the manner in which they presented this, take it or leave it, lose your job, effective immediately, no aviary notice, the manner in which it was presented with confusing language of you're signing something that's not an agreement, but you're bound by it, not telling them that they're bound by it just in staying there in their position. There was substantial findings of fact by the judge and in the record to support that with these particular class plaintiffs, they are in the same position and they were members of other existing putative classes. That's different, and maybe somehow in those other cases, if this issue arose, your two clients would be able to participate in those, notwithstanding the fact that they, you know, have a valid agreement with respect to this case. Well, I disagree with that to a certain extent, Your Honor, because I think the offer and acceptance process, when it contains information that is, you know, what constitutes mistake or fraud and inducement, because they don't actually clarify existing what existing is, and that's the case found in most cases by, you know, currency and also by the Northern District of California, when they leave out information that is, that's relevant to them, whether they quit their job or not, and I think it would be relevant that I was in other classes. Maybe in the aggregate, being in four classes rather than just in my one is going to make the difference. It is a material difference that would sort of con... Is it focusing on your two, the two named plaintiffs? What is it that you would have them be told that would make a difference to them? I mean, here they are, they've brought this lawsuit, they've got counsel, they know what the agreement is, they know what the class action is all about. What else do they need to be told? Well, under the terms of the agreement, they had no opportunity to consult counsel at any time, and they had no period on which to, it's effective immediately upon receipt. I assume if they had quit right then, which is what Nordstrom says, then that would be their choice. But as far as what I think they, and I want to answer directly, as far as what they should have been told, the FAA does address existing lawsuits, and it distinguishes them from other, in Section 2, lawsuits that have already passed. And future, well, they don't actually say future, just past and existing. And in the case of Currency and also Williams, the judge says if you're going to apply arbitration and waive your rights to the judicial forum, you need to have understanding of what you're actually waiving, that you are a member of a class action. That has been found in all the cases the judge relied on, and also in the Northern District of California, in the AstraZeneca case, and in the Long case, has been found to be a material omission. The fact that you are a member of any class action to which you are in this, in this arbitration agreement, giving up the ability to remain in that class action and choosing arbitration, having that information withheld is still relevant to these people, and they should have been told. Clearly and unequivocally, what your choice is. In other words, Your Honor, one of the things that substantive unconscionability talks about, and I would, unlike, I believe, counsel for in the Davis case, I would argue that unconscionability is an alternative grounds upon which you may find and affirm the district court. And substantive conscionability in California, in the Perconi case, talks about the terms that are one-sided and leave expectations are sort of turned around. Here, this is the ultimate gotcha. They don't know they're members of class actions. Gina and Nune do know they're members of one, but they don't know the other ones. They don't know they're being given up that right at this point, because they don't have that information. What makes it really critical under California law of mistake is that Nordstrom has that information, and they know that the other operee does not have that information. If we don't accept your invitation to go down the unconscionability road, and we're just focusing on Rule 23, it seems to me your, the two named plaintiffs' coverage by these other pending class actions has nothing to do with what remedy the district court in this case can impose. That's for whoever those other judges supervising those other class actions want to do. Well, I have to respectfully disagree on that point, because when you look at contract formation, all you're looking at is whether this particular contract and the operee and the offeror are the positions in which they're in. And it doesn't matter that the other judge would be supervising those class actions. What matters is we focus on, as Justice Thomas has said over and over in the Supreme Court, you focus on that contract formation. If there are material facts that are omitted that I have and you don't have, like I know my house has construction defects and I'm selling it to you without disclosing that, there is no contract. And it's not collateral to that contract that they were part of other pending class actions. This is the information. The entire motive here was to get one over on the ultimate gotcha of all the employees, because there were so many of them in pending class actions, not just ours but others. So I have to respectfully disagree that it's not legally significant that the judge could supervise it in that case, although I do believe in putative class actions. Here it exactly dovetails the kind of conduct that renders this contract invalid under general contract principles. Let me ask you this. Why does it matter whether your, I mean, put aside your own interest, but just in terms of your client's interest, why does it matter whether they can remain the named plaintiffs in this class action, given that they are covered by the Marovan-Tano case? Well, they're not covered by the Marovan-Tano case. The judge has certified the class exempting, well, two questions. Number one, there are claims. They're not members of the class in that other case? They are not former employees. The other class is a former employee class. Okay. They are employees. So that's first of all. Also, the judge has ruled in this case, and I'm not even sure if it was briefed, but the 17-200 claim that we have cannot be represented by the Marovan-Tano class. That's been a ruling in the case, the law of the case, the injunctive relief. Only Balassanian and Nalbandian. That I don't know. I understand that the named plaintiff in the Marovan-Tano case is a former employee, but you're saying that the class that was certified in that case is limited to former employees? Yes. Okay. I'm wrong about that? I thought you were wrong, but that's why I'm asking again. I understand that there is a huge overlap between the people you guys are trying to represent and the folks who are covered by the Marovan-Tano class. Yes. I misspoke. They cannot be a member of the Marovan-Tano case if the DRA is enforced as to them, because the judge, when he certified the class, and this hasn't been briefed because the briefing was before class certification, and I think it's very telling what the judge was thinking here. He was thinking invalidity of contract, and I can read the words from his order, because he actually exempted from the class, the entire class, all those employees who were not members of any putative class at the time the DRA was presented, and they are not part of our class action. They go to arbitration. So he's not saying that his problem here is the fact that there was an omission of material fact, that you are now in a judicial forum, and you're giving that up, and that is a critical choice, and without mutual consent and understanding of that in the context of take it or leave it in the Ralphs v. Chavarria case that just came down maybe a few months ago, that's substantive unconscionability, but it also goes to the formation of the contract. And our point here is that the judge understood very well from the briefing that this was going to be applied not only to the class refs, but to everyone, to take out tens of thousands of this class. That was the method. If he had supervised it, and he is an amazing judge, I'm sure, he would have made sure that this was above board, that communications did not constitute fraud, fraud in the inducement, confusion. Can I interrupt you? I mean, I'm trying to figure out, it seems to me, you correct me if I'm wrong, there's sort of three ways that this could come out. The first is I've been trying to get counsel to talk about this Avery case, and I don't understand why you're not zeroing right in on that. But one way to decide this case is just to say there was no contract, because it breached the implied covenant of good faith and fair dealing. So that ends the inquiry as to anyone that had an accrued claim. So that's one way to decide it. The second way to decide it, it seems to me, is we agree with the district court judge with respect to the notice issue, but we don't reach unconscionability, and we send the case back, and I guess we send it back, and as Judge Watford said, maybe Nordstrom gives gold-plated notice and then it goes wherever it goes after that. I guess the third way would be to address both notice and unconscionability and say, you know, we think the judge got it right with respect to notice, and we also think that the contract as it is is unconscionable. So even if there was a notice of it, it can't be enforceable because it's unconscionable. Are those the alternatives, or am I missing something? I mean, obviously, I'm saying if we went in your favor, obviously we could go the other way. I have nothing to add to that except that I don't want to give the impression I'm not zeroing in on the acceptance side here of the no contract under the breach of the good faith and fair dealing in the Avery case because I don't think it was answered by Nordstrom. I don't think there is an answer. I think this contract at its formation stage was doomed, and under that, there's no conflict with the FAA on that point. That's squarely in savings clause. And I also do believe and do want to stress, even though the judge didn't reach it, that you have every right under the Dillard's case to affirm on any ground that the record upholds, and unconscionability is spot on here. This was an unfair, confusing cram down of a DRA during a pendency of a class action when the lawyers were under the obligation to run this past the judge, and if he had been supervising, I agree, we wouldn't be here. This was just a doomed contract from the very beginning on formation grounds, on breach of good faith and fair dealing, and on unconscionability grounds. And that is our position. We don't disagree with anything Your Honor just stated in the order and articulation that you had. So we're 100 percent on that. We don't think that the issue today for this Court is to make some grand or esoteric finding on Concepcion or CompuCredit or the cases that have been briefed by Nordstrom. Those are really not the first task, as Judge Trott said, in looking at whether an arbitration under Section 4 of the FAA is to go forward. And that clearly, the language says, you must first satisfy yourself that there is indeed a valid contract to arbitrate. And I think on the three grounds that you have set forth and the state law of California, which clearly sets forth mistake, fraud in the inducement, Contracts 101, multistate bar exam, this was an improperly formed and created contract. And on that basis, it was not enforced by the judge in his role as a supervisor of the class action. Counsel, let me stop you. No. Okay. You're well over your time at this point. Oh. I would submit. Yes. We appreciate the arguments. Thank you. We'll give you a couple minutes for rebuttal. Thank you, Your Honor. I will try to follow your suggestion that we deal with the named plaintiffs and then the absent members. On the named plaintiffs, they knew they had a lawsuit. They had counsel. There's evidence in the record that both of them discussed the agreement with their counsel. One of the named plaintiffs even said, geez, if arbitration is going to happen in L.A. where I live, I'd rather do that, or I'd be better off than if I'm in a class action in San Diego. If there's some other class that they may be a member of, if it's ever certified, that's for some other judge, as you pointed out. On the issue of whether some further disclosure should be given, first of all, the agreement was clear. The July agreement was never challenged in the trial court. It was just the August agreement. And the July agreement clearly said, they both said, you know, past, present, and future disputes. When you think about this, suppose Nordstrom had decided to move a bunch of these people outside of California to a new store. Would they have to go to the judge for that? Because that would remove them from the class. If they decided to change the pay plan some way, so if the class maybe is going to be paid on a different way, and it's going to affect this class action, well, they have to go to the judge for that. I mean, when you think about this Rule 23 issue, it could severely restrict the ability of employers to communicate with employees. And there's case law that there must be findings of actual abuse, not just that some people may be confused. On the issue of take it or leave it, I mean, that's been rejected in numerous cases, mainly Concepcion. I mean, many, many, many agreements today, not just employment agreements, but consumer agreements are take it or leave it. There's nothing that doesn't create any kind of unconscionability. On the issue of the supposedly stripping out class members, they haven't lost any rights, as I've said a couple of times. They can go. They can arbitrate these two individuals and anybody else. There is a class action still ongoing. And if there's people, and I believe that counsel was incorrect that there's no current employees in that class. There are people that became employed, and I'll probably get it wrong, before 2011. There are current employees in that class. Just a couple of other points, because I know I'm out of time. The gotcha argument. Again, there's no gotcha because nobody's rights are being affected other than being taken out of a class and having the litigation somewhere else under the same grounds. Finally, on the substantive unconscionability, I think if you read this agreement, it doesn't run afoul of any of the Armendariz-type factors that have been around for a long time. And on the retroactivity issue that Judge Smith mentioned, I mean, you can agree to arbitrate existing agreements. When you think about it, you know, the federal courts can't create exceptions to the FAA. The state courts can't create exceptions. Even Congress, when it creates exceptions, as we heard in the last case, has to be very specific. Here, what happened was the district judge created an exception based on his view that there was some kind of misleading communication. I have one really quick question. If we were to rule in favor of the plaintiff in the Davis case, that there was no adequate 30-day notice with respect to the changes in the July and the August agreements, what effect would that have, if any, on this case? Well, first of all, the plaintiffs in this case didn't challenge the July agreement below. Yeah. They only challenged the August agreement. So I don't think that they can take the benefit of that. But, you know, if there's no contract, there's no contract. I guess that's the point of your question. That is exactly the point of my question. Let's say we decided Davis first and we agreed with the plaintiff. We said there's no contract. Yeah. Now, wouldn't that have wide-ranging effects on the enforceability of this August agreement? Yes. But I think it's very clear there was a contract. I know you think that. I'm just trying to get in my head. Look, if Your Honor is asking me if you find there's no contract either July or August, then, yes, there's no contract. It has an impact on this case. Absolutely. Well, they're the same agreements. Right. And the same rollout provisions. I don't agree, however, that they were misleading. I understand. By the way, we appreciate your time, Your Honor, and on behalf of Nordstrom and I'm sure the other parties as well. Okay. Thank you, counsel. We appreciate the arguments.
judges: Smith, Noonan, Watford